IN THE COURT OF APPEALS OF NORTH CAROLINA

 No. COA 19-126

 Filed: 17 September 2019

Mecklenburg County, Nos. 17 CRS 220028, 17 CRS 220032

STATE OF NORTH CAROLINA,

 v.

ANTE NEDLKO PAVKOVIC, Defendant.

 Appeal by defendant from final judgment entered 9 May 2018 by Judge Hugh

B. Lewis in Mecklenburg County Superior Court. Heard in the Court of Appeals

22 August 2019.

 Attorney General Joshua H. Stein, by Special Deputy Attorney General Karen
 A. Blum, for the State.

 Bell Law Firm, by Hannah R. Bell, for defendant-appellant.

 ARROWOOD, Judge.

 In this appeal, defendant raises multiple issues relating to: (1) the

constitutionality of a Charlotte noise ordinance, of his arrest, and of his probation

sentence; and (2) alleged errors by the trial court in interpreting the noise ordinance,

admitting certain evidence, and finding he resisted an officer. For the reasons set

forth below, we affirm.

 I. Background
 STATE V. PAVKOVIC

 Opinion of the Court

 On 27 May 2017, Ante Nedlko Pavkovic (“defendant”) was speaking at an anti-

abortion event held outside an abortion clinic located at 3220 Latrobe Drive,

Charlotte, North Carolina (“the abortion clinic”). Charlotte-Mecklenburg Police

Department (“CMPD”) officers testified that they observed defendant standing at a

table yelling into a microphone. CMPD Officer James Gilliland, testified that on the

table was the amplifier or controls for the speaker to which the microphone

transmitted, and defendant “was the only one on the microphone.” Using a

department-issued 3M™ sound meter (“the noise meter”), CMPD officers observed

“sustained readings” over eighty decibels, with occasional “spikes” up to eighty-four

decibels. The officers alerted CMPD Sergeant B.K. Smith, who was also there to help

monitor the event, of the violation. They then wrote a citation to the permit holder

for the event, David Jordan.

 Officers then approached defendant, informed him of the violation, and asked

for his identification so that they could issue a citation to him as well. Officer

Gilliland twice asked defendant for his identification, but defendant refused both

requests. Sergeant Smith then asked defendant three times to present his

identification, with defendant refusing each time. After defendant’s fifth refusal to

present his identification, he attempted to argue that the officers could only cite the

permit holder for any noise violations. After approximately one minute of argument,

Sergeant Smith told Officer Graham to arrest defendant. As Officer Graham began

 -2-
 STATE V. PAVKOVIC

 Opinion of the Court

handcuffing defendant, he stated that his identification was in his car, not on his

person. CMPD charged defendant with violating Charlotte Ordinance § 15-64 (“the

noise ordinance”), and resisting an officer by refusing to provide his identifying

information to the CMPD officers.

 On 5 September 2018, sitting without a jury, the Honorable Judge Hugh B.

Lewis concluded that defendant was guilty of both charges, but dismissed the charge

of violating the noise ordinance. The court noted that the City of Charlotte (“the

City”) had discretion to decide which enforcement penalties it would levy against a

violator of the noise ordinance, but that the City failed to do so. The trial court thus

found the magistrate’s order for defendant’s noise ordinance violation “defective,”

because the State failed to clearly express which enforcement penalty it would levy

against the defendant. Due to the defective order, the trial court dismissed the noise

ordinance violation and concluded it would “not take any further action, other than

saying the defendant violated the ordinance[.]” (emphasis added).

 The court convicted defendant of resisting an officer, and sentenced him to

forty-five days imprisonment, and imposed a fine of $200.00. The sentence was

suspended, and defendant was placed on supervised probation for twenty-four

months. As a condition of probation, defendant was restrained from being within

1500 feet of the abortion clinic at which he had been protesting.

 Defendant gave oral notice of appeal in open court.

 -3-
 STATE V. PAVKOVIC

 Opinion of the Court

 II. Discussion

 On appeal, defendant argues (1) that CMPD had no reasonable suspicion to

arrest him; (2) that the noise ordinance is facially unconstitutional; (3) that the

Superior Court erred in allowing the meter used to measure defendant’s volume to be

admitted as evidence; (4) that the Superior Court erred in restraining defendant from

being within 1500 feet of the abortion clinic for the term of his probation; and (5) that

the Superior Court erred in concluding that defendant was “operating or allowing the

operation of any sound amplification equipment” under the noise ordinance. To the

extent that the first three arguments raise constitutional issues, we address them

together.

 A. Standard of Review

 “When the trial court sits without a jury, the standard of review for this Court

is whether there was competent evidence to support the trial court’s findings of fact

and whether its conclusions of law were proper in light of such facts.” State v. Dunn,

200 N.C. App. 606, 608, 685 S.E.2d 526, 528 (2009) (citing State v. Lazaro, 190 N.C.

App. 670, 670-71, 660 S.E.2d 618, 619 (2008)). “The well-established rule is that

findings of fact made by the court in a non-jury trial have the force and effect of a jury

verdict and are conclusive on appeal if there is evidence to support them, although

the evidence might have supported findings to the contrary.” Henderson County v.

Osteen, 297 N.C. 113, 120, 254 S.E.2d 160, 165 (1979) (citation omitted). “A trial

 -4-
 STATE V. PAVKOVIC

 Opinion of the Court

court’s unchallenged findings of fact are ‘presumed to be supported by competent

evidence and [are] binding on appeal.’ ” State v. Evans, __ N.C. App. __, __, 795 S.E.2d

444, 448 (2017) (quoting Hoover v. Hoover, __ N.C. App. __, __, 788 S.E.2d 615, 616

(2016)).

 B. Rules of Appellate Procedure Violations

 Defendant’s brief contains numerous violations of our Rules of Appellate

Procedure, including violations of Rule 26(g), Rule 28(b)(6), Rule 28(e), and Rule

28(g)(2).

 Defendant’s brief is single spaced. Rule 26(g) requires appellate briefs to be

double spaced. N.C.R. App. P. Rule 26(g) (2019). Rule 26(g), requiring parties double-

space their briefs, “facilitates the reading and comprehension of large numbers of

legal documents by members of the Court and staff.” State v. Riley, 167 N.C. App.

346, 347-48, 605 S.E.2d 212, 214 (2004). Rule 26(g) is plain on its face and a cursory

reading of the Appellate Rules by counsel would have avoided such a blatant

violation.

 Additionally, the brief fails to contain a proper table of authorities, fails to

support its factual assertions with any reference to the Record or Transcript, and fails

to properly arrange the argument consistent with the briefing requirements, all in

violation of the provisions of Rule 28 of the Rules of Appellate Procedure. N.C.R. App.

P. Rule 28 (2019). Finally, while the brief complies with the word limits set forth in

 -5-
 STATE V. PAVKOVIC

 Opinion of the Court

the Rules, the declaration contained in the brief is deficient in that, while it attests

compliance, the Court was required to conduct its own analysis of the documents to

ascertain that the number of words was within the limits of Rule 28(j).

 1. Noncompliance

 North Carolina Rules of Appellate Procedure 25(b) provides that an appellate

court “may, on its own initiative . . . impose a sanction against a party or attorney or

both when the court determines that such party or attorney or both substantially

failed to comply with these rules.” N.C.R. App. P. 25(b) (2019). Sanctions allowable

under Rule 25(b) are “of the type and in the manner prescribed by Rule 34 for

frivolous appeals,” id., which include dismissal, single or double costs, “damages

occasioned by delay,” or “any other sanction deemed just and proper.” N.C.R. App. P.

34(b) (2019).

 “The Rules [of Appellate Procedure] are mandatory, and serve particular

purposes[.]” Riley, 167 N.C. App. at 347, 605 S.E.2d at 214. If a court determines

that “a party fails to comply with one or more nonjurisdictional appellate rules,” and

that “noncompliance is substantial or gross under Rules 25 and 34 . . . [the court]

should then determine which, if any, sanction under Rule 34(b) should be imposed.”

Dogwood Dev. & Mgmt. Co., LLC v. White Oak Transp. Co., 362 N.C. 191, 201, 657

S.E.2d 361, 367 (2008).

 -6-
 STATE V. PAVKOVIC

 Opinion of the Court

 While defendant’s violations of Rules 26, 28(b), and 28(e) are substantial and

gross and impaired this Court’s ability to discern the merits of defendant’s

arguments, the noncompliance is not enough to warrant dismissal of his appeal. See

Dogwood, 362 N.C. at 200, 657 S.E.2d at 366 (“[O]nly in the most egregious instances

of nonjurisdictional default will dismissal of the appeal be appropriate.”).

Nevertheless, considering both the extent to which “the noncompliance impair[ed] the

court’s task of review” and “the number of rules violated,” defendant’s noncompliance

with the rules is “substantial or gross under Rules 25 and 34.” Id. at 200-201, 657

S.E.2d at 366-67. As such, this Court will determine which sanctions under Rule

34(b) should be imposed.

 2. Sanctions

 Given defendant’s numerous violations of the Rules—some, if not most, of

which could have been avoided by an even cursory reading of the Rules—we hereby

sanction counsel for defendant. Counsel is ordered to personally pay double the court-

imposed costs of this appeal, including all costs of printing the briefs and records in

this matter within 30 days of the date this Opinion is certified.

 C. Constitutional Challenges

 Having determined that the rule violations do not merit dismissal, we now

consider the merits of defendant’s arguments.

 -7-
 STATE V. PAVKOVIC

 Opinion of the Court

 Defendant asserts three arguments consisting of constitutional challenges.

Defendant argues (1) that CMPD had no reasonable suspicion to stop him, and by

extension, no authority to arrest him; (2) that the noise ordinance is facially

unconstitutional; and (3) that the probation requirement banning defendant from

coming within 1500 feet of the abortion clinic violates the First Amendment. We

address each of these arguments in turn.

 1. Reasonable Suspicion to Stop Defendant

 Defendant first argues CMPD did not have reasonable suspicion to stop him,

thereby rendering his subsequent arrest for resisting an officer illegal. Though

defendant does not expressly refer to the constitutionality of the stop, the argument

that CMPD lacked reasonable suspicion to effect a stop is the standard for Fourth

Amendment challenges. See, e.g., State v. Barnard, 184 N.C. App. 25, 29, 645 S.E.2d

780, 783 (2007) (citing Terry v. Ohio, 392 U.S. 1, 21, 20 L.Ed.2d 889, 906 (1968)).

Defendant did not raise this argument at trial, thus failing to preserve the issue for

appeal. State v. Lloyd, 354 N.C. 76, 86-87, 552 S.E.2d 596, 607 (2001) (citing State v.

Benson, 323 N.C. 318, 322, 372 S.E.2d 517, 519 (1988)) (“Constitutional issues not

raised and passed upon at trial will not be considered for the first time on appeal.”).

Accordingly, this Court will not address it.

 Alternatively, defendant argues there was “no reason to stop” defendant

because the trial court dismissed defendant’s noise-ordinance-violation charge. In

 -8-
 STATE V. PAVKOVIC

 Opinion of the Court

support of his argument, defendant contends because “the record is silent as to the

reason for dismissal, this Court cannot assume why the case was dismissed.” Rather,

defendant asserts this Court “must find that there was no noise ordinance violation,”

which would in turn negate any reason to stop defendant in the first place.

 In addition to defendant failing to cite any statute or precedent to support this

claim, defendant also misstates the facts of the dismissal. The trial court expressly

stated it found “[defendant] is in violation of the ordinance.” However, pursuant to

the ordinance, the particular punishment for violating the ordinance was left to the

City’s discretion. Charlotte, N.C., Municipal Code § 15-64 (2018). Unable to ascertain

in what way the City had exercised its discretion, the trial court decided it “[would]

not take any further action, other than saying the defendant violated the

ordinance[.]” Thus, the charge was dismissed because it was unclear which penalty

the City chose to levy against defendant, not because defendant had not violated the

ordinance. We therefore reject defendant’s argument that dismissing the charge

meant “that there was no noise ordinance violation.”

 2. Facial Unconstitutionality

 Defendant next argues that the noise ordinance is facially unconstitutional

because it vests CMPD with “unbridled discretion” to grant or deny permits. Once

again defendant did not raise this argument at trial, so this Court will not address it.

Lloyd, 354 N.C. at 86-87, 552 S.E.2d at 607.

 -9-
 STATE V. PAVKOVIC

 Opinion of the Court

 3. First Amendment Challenge to Ban from Clinic

 Finally, defendant argues banning him from being within 1500 feet of the

abortion clinic as a condition of his probation violates his First Amendment right to

free speech. As with his other constitutional arguments, defendant failed to raise

this issue at trial. Failure to challenge a sentence at trial is not always fatal, however,

because our legislature has preserved for “appellate review even though no objection,

exception or motion has been made in the trial division,” allegations that “[t]he

sentence imposed was unauthorized at the time imposed, exceeded the maximum

authorized by law, was illegally imposed, or is otherwise invalid as a matter of law.”

N.C. Gen. Stat. § 15A-1446(d)(18) (2017). However, our State’s Supreme Court has

held that a defendant cannot preserve a constitutional argument using paragraph

(d)(18), “even when a sentencing issue is intertwined with a constitutional issue.”

State v. Meadows, __ N.C. __, __, 821 S.E.2d 402, 407 (2018). Therefore, to the extent

that defendant grounds this argument in a First Amendment challenge, defendant

failed to properly preserve this argument, and we will not address it.

 D. Court’s Discretion to Impose Conditions of Probation

 In addition to the constitutional argument, defendant also argues that a court

may not, as a condition of probation, “ban[ a defendant] from a premises” unless it is

“protecting an identified victim.” Accordingly, he argues because the State did not

identify a victim at sentencing, the trial court could not ban defendant from the

 - 10 -
 STATE V. PAVKOVIC

 Opinion of the Court

abortion clinic. In support of his argument, defendant cites statutory provisions

regarding domestic protection orders, N.C. Gen. Stat. § 50B-3 (2017); trespass relief,

N.C. Gen. Stat. §§ 14-159.11-13 (2017); and larceny relief, N.C. Gen. Stat. § 14-72

(2017). None of these statues are relevant to the facts of this case.

 This Court reviews a challenge to a trial court’s decision to impose a condition

of probation for abuse of discretion. State v. Allah, 231 N.C. App. 88, 98, 750 S.E.2d

903, 911 (2013).

 Defendant offered three statutory authorities which provide examples of

restraining orders involving a “victim,” but has presented no precedent, regulation,

statute, or any other reason to interpret these statutes to restrict trial courts’

statutorily granted authority to impose probation conditions in situations such as

this. In fact, there is precedent contradicting defendant’s assertion a court may not

“ban[ a defendant] from a premises” unless it is “protecting an identified victim.” In

Harrington, this Court upheld a trial court order banning the defendant, during the

hours of 8:00 p.m. to 6:00 a.m., from premises selling or serving alcohol. State v.

Harrington, 78 N.C. App. 39, 48, 336 S.E.2d 852, 857 (1985). The ban was a condition

of the defendant’s probationary sentence imposed as punishment for a DWI. Id.

Similar to the present case, there was no “identifiable victim” in Harrington; no one

was harmed by the defendant’s violation of the law. Yet, we upheld the condition.

Id.

 - 11 -
 STATE V. PAVKOVIC

 Opinion of the Court

 More importantly, “[u]nder N.C. Gen. Stat. § 15A-1343(b1), the trial court may

impose any conditions on probation that it determines ‘to be reasonably related to

[defendant’s] rehabilitation.’ ” State v. Johnston, 123 N.C. App. 292, 304, 473 S.E.2d

25, 33 (1996). “The trial court is accorded ‘substantial discretion’ in imposing

conditions under this section.” Id. at 305, 473 S.E.2d at 33 (quoting State v.

Harrington, 78 N.C. App. at 48, 336 S.E.2d at 857 (1985)). Its discretion is not

boundless, however, but is limited to “whether the challenged condition bears a

reasonable relationship to the offenses committed by the defendant, whether the

condition tends to reduce the defendant’s exposure to crime, and whether the

condition assists in the defendant’s rehabilitation.” Allah, 231 N.C. App. at 98, 750

S.E.2d at 911 (citing State v. Cooper, 304 N.C. 180, 183, 282 S.E.2d 436, 438 (1981)).

 Here, the condition that defendant not come within 1500 feet of the abortion

clinic is reasonably related to the offense because defendant violated the noise

ordinance while speaking in protest outside the clinic. The condition also tends to

reduce defendant’s opportunity to violate the ordinance again, especially given that

defendant regularly speaks at abortion protests that take place at or near that

particular clinic. Lastly, the condition assists in defendant’s rehabilitation by

discouraging future misconduct. We therefore reject this argument.

 E. Admissibility of the Noise-Meter Reading

 - 12 -
 STATE V. PAVKOVIC

 Opinion of the Court

 Defendant next argues the trial court erred in admitting, over defendant’s

objection, Officer Gilliland’s testimony that defendant exceeded the volume allowed

by the ordinance. Defendant contends it should not have been admitted because

Officer Gilliland based his testimony on readings from a noise meter that defendant

argues “did not have the characteristics established by the American National

Standards Institute.”

 Regarding sound measurements, the noise ordinance provides “the noise shall

be measured on the A-weighting scale on a sound level meter of standard design and

quality having characteristics established by the American National Standards

Institute.” Charlotte, N.C., Code § 15-62 (2018).

 At trial, defendant objected that the State had not laid proper foundation

establishing the noise meter’s characteristics conformed with those established by

the American National Standards Institute (ANSI). Where a defendant objects to the

introduction of evidence because “the State had not laid a proper foundation that they

[sic] complied with the statutory procedures” for obtaining that evidence, “defendant

open[s] the door for testimony” that the State did comply with those statutory

procedures. State v. Berry, 143 N.C. App. 187, 193-94, 546 S.E.2d 145, 151 (2001).

 Here, following defendant’s objection, the trial court instructed counsel for the

State to “ask a few additional foundation questions[.]” Counsel then asked whether

the noise meter “has the characteristics established by the [ANSI].” In response,

 - 13 -
 STATE V. PAVKOVIC

 Opinion of the Court

Officer Gilliland testified that the noise meter is “approved by the department” and

is “a department-owned device,” but did not explicitly say it met the characteristics

established by the ANSI. When pressed again about whether the noise meter

“meet[s] the standards set by any national organizations though,” Officer Gilliland

testified it has “a certificate of approval that it is accepted approved [sic].” Defendant

objected after this testimony, arguing the State still had not laid proper foundation

on the meter. The trial court overruled this second objection.

 “On appeal, the standard of review of a trial court’s decision to exclude or admit

evidence is that of an abuse of discretion. An abuse of discretion will be found only

when the trial court’s decision was so arbitrary that it could not have been the result

of a reasoned decision.” Brown v. City of Winston-Salem, 176 N.C. App. 497, 505, 626

S.E.2d 747, 753 (2006) (citing Williams v. Bell, 167 N.C. App. 674, 678, 606 S.E.2d

436, 439 (2005)) (internal quotation marks omitted). Here, the trial court decided to

admit the evidence over defendant’s second objection after it had already required

the prosecution to lay additional foundation. In the course of laying foundation, the

prosecution elicited testimony that CMPD’s noise meter was both approved by the

police department and had a certificate of approval from a national organization.

Although unclear whether the national organization that issued approval was the

ANSI, the trial court’s decision was not “so arbitrary that it could not have been the

result of a reasoned decision.” The trial court could rationally infer, from the context

 - 14 -
 STATE V. PAVKOVIC

 Opinion of the Court

of the prosecution’s questions, that Officer Graham’s response was addressing both

whether the noise meter was approved by any national organization and the ANSI

specifically. Thus, we hold the trial court did not err in admitting evidence of the

noise meter readings.

 Defendant further argues that “if the alleged violation was based on a faulty

decibel reading, then police never had reasonable suspicion to stop” him, essentially

asserting the very basis for his convictions was invalid. Defendant’s argument rests

on the assumption the noise meter was faulty, without providing any evidence of such

an assertion. Although defendant objected at trial to whether the State laid a proper

foundation, he made no challenge to the sufficiency of the evidence presented by the

State, nor offered any evidence of his own. A defendant may only challenge the

sufficiency of the evidence on appeal if he had moved to dismiss at the close of the

State’s evidence, the close of all evidence, or both. N.C.R. App. P. 10(a)(3) (2019).

Defendant made no such motions at trial, and thus failed to preserve this issue for

appeal. This Court will therefore not address it.

 We note that intertwined in defendant’s evidentiary challenge is also a

constitutional argument regarding whether the police had reasonable suspicion to

stop defendant. However, defendant failed to preserve this argument because he did

not raise any objection at trial “referenc[ing] . . . the Fourth Amendment, . . . privacy,

or reasonableness, [and therefore] it is ‘not apparent from the context,’ N.C.R. App.

 - 15 -
 STATE V. PAVKOVIC

 Opinion of the Court

P. 10(a)(1), that defense counsel intended to raise a constitutional issue.” State v.

Bursell, __ N.C. __, __, 827 S.E.2d 302, 305 (2019) (citation in original). Defendant

“thereby waiv[ed] the ability to raise th[is] issue on appeal.” Id. at __, 827 S.E.2d at

305.

 F. “Operating or Allowing Operation”

 Defendant’s sole remaining argument is that the trial court erred in concluding

that speaking into a microphone constitutes “operating . . . sound amplification

equipment” under the noise ordinance. Interpreting statutes is a question of law,

reviewed de novo. In re Foreclosure of Vogler Realty, Inc., 365 N.C. 389, 392, 722

S.E.2d 459, 462 (2012). The noise ordinance states, in pertinent part:

 (a) It shall be unlawful to:
 ....
 (3) Operate or allow the operation of any sound amplification
 equipment in the public right-of-way, including streets or
 sidewalks . . . (ii) so as to produce sounds registering more
 than 75 db(A) ten feet or more from any electromechanical
 speaker . . . . In addition to the person operating or allowing
 the operation of sound amplification equipment in violation of
 this subsection, the person to whom the permit was issued
 must be present at the location and during the times
 permitted and shall be liable for any and all violations.

Charlotte, N.C., Code § 15-64. The Superior Court concluded that “[t]he defendant

in this case is shown in a video speaking into a microphone which exhibits loud sound

which, as testified by an officer, spiked at 84 decibels. In the plain English, the

individual was operating that sound equipment, therefore he is in violation of the

 - 16 -
 STATE V. PAVKOVIC

 Opinion of the Court

ordinance.” (emphasis added). Though defendant did not specifically allege that the

ordinance is ambiguous, he notes the ordinance is silent as to what defines an

“operator.” While the noise ordinance likely does not define the term “operator”

because it does not use the term “operator”—instead referring to a “person operating

or allowing the operation of sound amplification equipment”—we note that the

ordinance does not define “operating or allowing the operation,” either.

 Defendant argues he was not “operating” because (1) there was no evidence

that he had volume control on his wireless microphone; (2) there was no evidence he

“had actual physical control over any sound equipment that could control the

volume;” and (3) there was no evidence that he owned the equipment.1 Defendant

thus restricts “operating or allowing the operation of sound equipment” to either

controlling the volume or holding title to the equipment.

 We find defendant’s interpretations unduly narrow and instead will use the

plain meaning of “operate” to determine the noise ordinance’s breadth. Definitions

for “operate”—as a transitive verb, how it is used in the statute—include “to cause to

function.” “Operate.” Merriam-Webster Online Dictionary. 2019.

https://www.merriam-webster.com/dictionary/operate (26 Aug. 2019). The “function”

of a microphone connected to a speaker is to receive sound from the person or thing

1 To the extent this is also an insufficiency of the evidence issue, we note that defendant failed to
challenge the sufficiency of the evidence at trial. Accordingly, any such argument is waived. N.C.R.
App. P. 10(a)(3).

 - 17 -
 STATE V. PAVKOVIC

 Opinion of the Court

inputting sound, and output amplified sound via the speaker. An electromechanical

speaker will not produce any sound without such an input, regardless of how high

that speaker’s volume setting is. Hence, volume control is not, per se, necessary to

“operate . . . sound amplification equipment,” but an “input” is “necessarily implied”

for sound amplification equipment to ever violate the noise ordinance. Therefore

“operating or allowing the operation of sound amplification equipment” necessarily

includes inputting the sound which the equipment amplifies. See Iredell Cty. Bd. of

Educ. v. Dickson, 235 N.C. 359, 361, 70 S.E.2d 14, 17 (1952) (Statutes’ “meanings are

to be found in what they necessarily imply as much as in what they specifically

express.”).

 Here, defendant input sound by “speaking into the microphone,” which the

connected speaker output at a volume over the limit prescribed by the noise

ordinance. As the trial court concluded, this act was “[i]n the plain English, . . .

operating that sound equipment.” We therefore affirm the trial court’s conclusion

that the defendant was operating the sound equipment in violation of the noise

ordinance.

 Furthermore, even if we were to accept that “operating or allowing the

operation of sound amplification equipment” requires control over the amplifier’s

volume, the trial court had sufficient evidence to determine that defendant was

operating the equipment. At trial, CMPD officers testified that while the volume was

 - 18 -
 STATE V. PAVKOVIC

 Opinion of the Court

exceeding the limit of the ordinance, defendant was standing at a table on which sat

the controls for the amplifier. This testimony was uncontradicted at trial, and

therefore is competent evidence upon which the trial court could find that defendant

had control over the sound amplification equipment’s volume. This finding could in

turn support the trial court’s conclusion that defendant was operating the sound

amplification equipment, even under defendant’s narrow interpretation.

 Defendant further requests that this Court “find that [the noise] ordinance

does not even apply to a guest speaker.” We reject this argument for two reasons.

First, defendant argues that applying the ordinance to guest speakers erodes the

First Amendment. To the extent that this raises a Constitutional argument “not

raised and passed upon at trial[,]” defendant may not now argue it on appeal. Lloyd,

354 N.C. at 86-87, 552 S.E.2d at 607. Second, to accept this argument would be to

“add to or subtract [an exception] from the language of the” ordinance, which our

State’s Supreme Court has held courts may not do. Ferguson v. Riddle, 233 N.C. 54,

57, 62 S.E.2d 525, 528 (1950). Defendant’s narrow reading requires us to pretend

that there are no circumstances in which one who is—or claims to be—a “guest

speaker” could not also be an operator. If Charlotte’s City Council had intended to

carve out a specific exception for “guest speakers,” it would have done so.

 Given that defendant was “operating” the amplified sound equipment above

the 75 db(A) permitted under the ordinance, we also agree with the trial court’s

 - 19 -
 STATE V. PAVKOVIC

 Opinion of the Court

conclusion that defendant resisted an officer by refusing CMPD officers’ requests to

provide his identification. Specifically, defendant was found guilty of violating N.C.

Gen. Stat. § 14-223, which provides “[i]f any person shall willfully and unlawfully

resist, delay or obstruct a public officer in discharging or attempting to discharge a

duty of his office, he shall be guilty of a Class 2 misdemeanor.” N.C. Gen. Stat. § 14-

223 (2017). In State v. Friend, we interpreted “resistance, delay, or obstruction”

under N.C. Gen. Stat. § 14-223 to include “the failure to provide information about

one’s identity during a lawful stop” when such failure hinders the police from

discharging their duties. 237 N.C. App. 490, 493, 768 S.E.2d 146, 148 (2014). There,

we held the defendant guilty of resisting an officer because his refusal to provide

identification hindered the police officer from completing a traffic citation. Id. at 493,

768 S.E.2d at 148.

 Here, CMPD officers were present on the scene to “keep the peace,” which

included “enforc[ing] any ordinances or state laws that may be violated.” Upon

registering defendant was violating the noise ordinance, they requested defendant

provide identification in order to issue him a citation. Defendant’s subsequent refusal

to provide identification hindered the police from issuing defendant a citation, and

thereby amounted to resisting an officer. See id. Thus, we hold the trial court did

not err in finding defendant guilty of resisting an officer.

 III. Conclusion

 - 20 -
 STATE V. PAVKOVIC

 Opinion of the Court

 For the foregoing reasons, we affirm the trial court’s judgment and sentence.

For violation of the Rules of Appellate Procedure, we sanction counsel for defendant

personally by directing counsel for defendant to pay double the court-imposed costs

of this appeal, including, but not limited to, the costs for printing of the records and

briefs within 30 days of the date this Opinion is certified.

 AFFIRMED.

 Judge COLLINS concurs.

 Judge BERGER concurs by separate opinion.

 - 21 -
 No. COA19-126 State v. Pavkovic

 BERGER, Judge, concurring in separate opinion.

 I concur in the result reached by the majority.

 That we may agree with the cause does not grant us license to ignore the law.

That we may disagree with the cause does not provide us a privilege to punish

arbitrarily. Justice resides in the consistent enforcement and application of the law.

While Defendant may argue that he has been treated unjustly given the peaceful

nature of his actions when compared to violent and destructive riots which have not

resulted in criminal convictions, we are not at liberty to put social justice above the

letter of the law.

 This case is not about abortion, a pro-life demonstration, or the First

Amendment. This case is about a defendant who hindered or delayed an officer in

the performance of that officer’s duties. No matter the importance an individual

assigns to his or her cause, there is an obligation to comply with a law enforcement

officer’s lawful request. See State v. Friend, 237 N.C. App. 490, 493, 768 S.E.2d 146,

148 (2014) (“failure to provide information about one's identity during a lawful stop

can constitute resistance, delay, or obstruction within the meaning of N.C. Gen. Stat.

§ 14–223.”).

 Here, Defendant was lawfully stopped for a noise ordinance violation. When

officers requested identifying information from Defendant to issue a citation, he

refused at least five times. Even though Defendant did not have his identification on
 STATE V. PAVKOVIC

 BERGER, J., concurring

him, he was not prevented from providing his identifying information. Further, it is

irrelevant that Defendant provided the requested information after being arrested.

By his refusal, Defendant resisted and delayed an officer in the performance of his

duties. While Defendant has a constitutionally protected right to argue the justness

of his cause in the public forum, he is not exempt from his obligation to abide by the

law.

 2